ALBERT HOFFMAN v. JEHIAL A. RICHARDS.

*Contract—Settlement—Evidence.*

Where, in a suit by a tenant to recover a certain sum which he claims the landlord agreed to pay him, on surrendering his lease, for his interest in the growing crops and other property, it appears from plaintiff's own testimony that, pending the negotiations for such surrender, the defendant repudiated the claim sued for, and refused to pay it, and asserted that he did not owe plaintiff anything, and that the plaintiff concluded the negotiations and surrendered his lease in the face of these positive declarations, a verdict should be directed in favor of the defendant.

Error to Ingham. (Person, J.) Argued November 16, 1893. Decided January 26, 1894.

*Assumpsit.* Defendant brings error. Reversed, and no new trial ordered. The facts are stated in the opinion.

*A. M. Cummins* (*R. A. Montgomery*, of counsel), for appellant.

*Arthur D. Prosser,* for plaintiff.

MONTGOMERY, J. This case originated in justice's court. The plaintiff, in 1891, became a farm tenant of defendant under an agreement to work the defendant's farm on shares. He purchased a half interest in certain stock, tools, and various other articles on the farm, agreeing to pay therefor $282.30, and gave his notes for the amount. In August, 1892, an agreement was made between the parties that the plaintiff should leave the farm, and should sell to defendant his interest in the growing crops, and in all the personal property, increase in stock, etc. A bill of sale was made and delivered, and plaintiff gave possession

to defendant. This action was brought to recover an indebtedness claimed to be due to plaintiff arising out of this transaction.

The parties are at variance as to what the agreement under which the plaintiff left the farm was. Upon the trial at the circuit the plaintiff limited himself to a claim for a stated sum of $224, which it was contended the defendant agreed to pay him for his interest in the property. The defendant, on the other hand, alleged that he had an account against the plaintiff in addition to the notes hereinbefore referred to, and that the agreement was on the part of the plaintiff that he would leave the farm, and give a bill of sale of his interest in the stock, etc., in payment of these notes and this account. That such a bill of sale was executed, and the notes delivered, is not in dispute, the controversy between the parties upon this point being whether there was, in addition to this, an agreement upon the part of defendant to pay the plaintiff the sum of $224. It is strenuously insisted by the defendant's counsel that the plaintiff's own testimony shows that there was no meeting of the minds of the parties upon any such contract as is asserted in his behalf, and the circuit judge was requested, both at the close of the plaintiff's testimony and by request to charge at the conclusion of the whole testimony, to direct a verdict for the defendant. The plaintiff supported his claim by no other testimony than his own, and the question presented calls for a thorough examination of his testimony. As it bears upon this point it is as follows:

"I told him [meaning defendant] if he returned the notes, I would return the stock to him; and I wanted $224 for the interest I had in the place, stock and crops that I had raised through the summer; and he agreed to that, and, after the notes were returned, he would not pay the $224. That was all the understanding there was between us."

On cross-examination he testified:

"He agreed to pay me, and when the bargain was made he wouldn't do it. I asked him for my pay next day. After we made the writing, I went down after my pay. Same day I moved away. It was while I was on the place. He told me he wouldn't do it. He said he was not owing me anything, and then I went right off from the place. While I was yet on the place, I told him I wanted him to pay me $224. He denied it. That was before I left the place. The reason I didn't stay there and insist on my rights in the crops was that he was so mean continuously that I couldn't get along with him."

In another place in his testimony he testified as follows:

"No, I didn't know before I left the farm that he was claiming he didn't owe me. I don't just understand. I was down there, and wanted $224 in cash, and he would agree to that. When the notes were returned, and I had returned the stock, he would not pay the $224. I first asked him to, the first day I was down there; the same day when we made out the papers; the same day or next. It was the same day. Yes, sir; I am pretty sure of that. I ain't positive whether it was the same day or the next. I said to him I wanted the money what I bargained for. He said he didn't owe me anything. I did know that he claimed he didn't owe me anything. The reason I didn't offer him the notes back, and tell him if that was what he claimed I would stay there, was that I couldn't get along with him. I did offer him the notes back. I told him I would return the notes if he would return the stock. I told him that the same day when I was down there. Mr. Randolph came up. I made the bargain with him. He wanted to know how I wanted to settle up. Mr. Randolph was up and done the business for him. It was the same day when we made out the papers. He came up in the morning, and we went down, and I told him how I wanted it straightened up; and Mr. Randolph agreed to that, and made the bargain. I asked Mr. Richards where my money was, and he said he didn't owe me anything after the papers were made out. He did, right at the time. He told me he didn't owe me anything. He had the paper in his hands at that time, and after that time handed it to me. I didn't tell him I wouldn't have it,

that I was going to keep the farm, because I couldn't get along with him. Right there, at that time, when we made this bargain, I told him I wanted this money, and he told me he didn't owe me anything. I am sure about that. I asked him for the money when we were there, and he said he didn't owe me anything. He had the notes when I asked him for the money. At the time these papers were made I said to Mr. Richards, '.Where is my $224?' and he said he didn't owe me anything. I am sure about that. I don't remember which of us had the notes. I am not sure about that. But he still had the contract, and I am not sure but he had the notes. I can't tell, when we had the talk, who did have the notes, he or I. So much said that I can't remember. I didn't go to see him the next day about paying me $224. It was the same day. That is the talk that I have testified to before; and that was while I was there yet, making this bargain. I thought he was so bad a man that I couldn't get along with him, and so I took the paper."

Counsel for plaintiff says that the witness became confused on cross-examination. This is undoubtedly true. But it is the right of the defendant to have it determined whether, as a matter of law, the plaintiff's testimony, taken as a whole,—that upon direct examination, as explained and modified by the cross-examination,—states such a contract as is relied upon. We feel constrained to hold in this case that the evidence falls short of making a *prima facie* case. By the plaintiff's own statement, pending the negotiations for the adjustment between the parties, he learned that the defendant repudiated his claim to the $224, refused to pay it, and asserted that he didn't owe him anything; and yet, in the face of this positive assertion, plaintiff concluded the contract, and, as he says, "I thought he was so bad a man that I couldn't get along with him, and so I took the paper." Unless contracts can be made by compulsion, no contract was shown here.

The circuit judge should have directed a verdict for the

defendant, and for this error the judgment will be reversed, with costs, and no new trial ordered.

The other Justices concurred.